J-S04023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RONALD THOMAS | : | |
| | : | |
| Appellant | : | No. 1034 EDA 2022 |

Appeal from the Order Entered March 4, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013001-2010

BEFORE: MURRAY, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:           **FILED NOVEMBER 13, 2023**

Appellant, Ronald Thomas, appeals from the order entered in the Philadelphia County Court of Common Pleas, denying his motion to bar retrial under principles of double jeopardy. We vacate and remand for further proceedings.

This Court has previously set forth the underlying relevant facts and procedural history of this case as follows:

> The charges against [Appellant] relate to his shooting and murder of Anwar Ashmore (Ashmore).
>
> Ashmore was fatally shot in the chest at the corner of North Stanley and West [Huntingdon] Streets in Philadelphia at approximately 9:00 P.M. on the evening of April 22, 2010. He suffered injuries to his sternum, heart, ribs, lungs and left arm. When Philadelphia Police Officers William Forbes and Anthony Ricci arrived on the scene moments later, a

_____

[*] Retired Senior Judge assigned to the Superior Court.

group of people was standing around him as he gasped for air. Ashmore was unable to answer the officers' questions and the bystanders denied having heard anything. Ashmore was pronounced dead at Temple University Hospital moments after arriving. The cause of death was two gunshot wounds to the chest, later determined to be from a .45 caliber handgun.

Approximately one hour after the shooting, Detectives Philip Nordo, Tracy Byard, Thorsten Lucke and Billy Golphin arrived at the scene. The police did not locate any eyewitnesses to the murder that night. However, one month later, on May 22, 2010, they arrested Raphael Spearman three blocks from the murder scene after a police chase. He was in possession of a .45 caliber handgun that was later determined to be the gun that fired the bullets that killed Ashmore. Over the ensuing days and months, Troy Devlin, Jeffrey Jones, Raphael Spearman and Kaheem Brown identified [Appellant] as Ashmore's killer. Detective Nordo took the statements of Devlin, Jones and Spearman. Detective [Nathan] Williams took Brown's statement.

\* \* \*

Trial commenced on September 11, 2018.[1] The Commonwealth proceeded under the theory that [Appellant] murdered Ashmore in retaliation for the shooting of his associate…approximately five months earlier. At trial, the Commonwealth presented Devlin, Jones, Spearman and Brown, each of whom identified [Appellant] as the shooter in their police statements, but then recanted at trial.[2] …

---

[1] This was Appellant's second trial, as this Court had granted Appellant a new trial based on the admission of hearsay evidence at his first trial in 2013. **See Commonwealth v. Thomas**, No. 1121 EDA 2013 (Pa.Super. 2015) (unpublished memorandum) ("**Thomas I**"), *appeal denied*, 635 Pa. 743, 134 A.3d 56 (2016).

[2] In recanting his testimony, Devlin claimed that he did not remember anything about the murder or giving a statement to police. Jones claimed his earlier statement to police implicating Appellant had been coerced by the

*(Footnote Continued Next Page)*

- 2 -

* * *

On September 19, 2018, at the conclusion of trial, the jury convicted [Appellant] of first-degree murder and related charges. The court sentenced him to an aggregate term of life imprisonment. [Appellant] timely appealed. …

* * *

[Prior to trial, o]n September 5, 2018, the Commonwealth [had] filed a Motion *in Limine* to Preclude Reference to Detective Nordo's Alleged Misconduct on the basis that such evidence was hearsay, irrelevant and collateral. More specifically, the Commonwealth maintained that, although the detective had since been fired by the Philadelphia Police Department for his misconduct, his actions occurred approximately five years after his interrogations in this case, none of the allegations involved [Appellant's] case, no criminal charges had been filed, and the Commonwealth did not intend to call him as a witness. Therefore, the Commonwealth argued, Detective Nordo's misconduct was a collateral issue. The court granted the motion the same day.

Neither Detective Nordo nor Detective Williams testified at trial. At the time of trial, Detective Nordo had been dismissed from the Philadelphia Police Department for allegedly putting money in prison inmates' commissary

---

homicide detectives. Spearman was found unavailable to testify after he refused to leave his cell, walk to the witness stand, or acknowledge his name on the record. Nevertheless, the Commonwealth introduced Spearman's testimony from Appellant's first trial in 2013, during which Spearman had also recanted his police statement implicating Appellant and stated that the detectives had coerced his testimony. Brown testified at Appellant's 2018 trial that he did not know or remember anything about the murder. Brown was also confronted with his 2013 testimony, in which Brown had claimed that the detectives tortured him into signing a statement implicating Appellant. At the 2018 trial, Brown maintained that he could not remember giving the 2013 testimony or remember the detectives torturing him. *See Commonwealth v. Thomas*, No. 2898 EDA 2018, unpublished memorandum at 4-12 (Pa.Super. filed June 3, 2020) ("*Thomas II*").

- 3 -

accounts and improperly communicating with witnesses and defendants outside of his official duties. There was no evidence of misconduct by Detective Williams at that time.

Since [Appellant's] trial, the Commonwealth has filed criminal charges against Detectives Nordo and Williams premised on their alleged misconduct in the investigation of crimes and use of police resources and has vacated the judgment of sentence and conviction in other cases based on Detective Nordo's misconduct. It has provided [Appellant] with related discovery. On April 22, 2019, [Appellant] filed a motion for remand to allow the trial court to conduct an evidentiary hearing based on this newly provided evidence. This Court denied the motion *per curiam*, without prejudice to [Appellant] bringing the issue up [before the] merits panel.

\* \* \*

Since the conclusion of his trial, the Commonwealth has provided [Appellant] with information about Detective Nordo's role in an unrelated murder case, ***Commonwealth v. Powell***, No. CP-51-CR-0006915-2015. In ***Powell***, the trial court dismissed all charges after "new and uniquely troubling information" about Detective Nordo's investigative techniques were revealed at a pretrial hearing on Powell's motion to dismiss.

At the hearing, the evidence showed that Detective Nordo made phone calls and unauthorized visits to incarcerated witnesses and deposited money into their prison accounts. He also had unauthorized contact with a judge without the District Attorney's knowledge and sought pretrial release of an incarcerated witness. He lied about whether he had prior relationships with witnesses he claimed only to have met during his investigation of Powell and his co-defendant. One of the witnesses could be heard on recorded prison phone calls telling Detective Nordo that he loves him and calling him "Coach." Nordo was unavailable for Powell's pretrial hearing because Nordo's attorney stated that Nordo would assert his Fifth Amendment privilege against self-incrimination.

Further, Detective Nordo took a statement from a person

- 4 -

who was under the influence of illegal narcotics and suggested everything that ultimately was said in the statement. That statement alluded to another conversation between the individual and the detectives that was not recorded. The detective had kept Powell's co-defendant in custody for seventeen hours before taking his written statement.

The Commonwealth also disclosed to [Appellant] a grand jury report that detailed Detective Nordo's coercive interrogation techniques, including threatening individuals with prosecution, intimidating individuals into signing false statements and giving people cash rewards for providing fabricated statements. The disclosure included multiple indictments that charged Detective Nordo with coercive sex crimes related to his interrogation of suspects and witnesses.

\* \* \*

Detective Nathan Williams was arrested in November 2019 and charged with tampering with public records, unsworn falsification to authorities, tampering with or fabricating physical evidence, and obstructing the administration of law. Since that time, the Commonwealth provided [Appellant] with certain related disclosures pursuant to its practice. Those disclosures included information from an internal investigation report showing that Detective Williams used police database records to find personal information about a woman that his cousin had been harassing and send the woman's personal information to his cousin, and then lying, attempting to conceal his misconduct from internal investigators.

*Thomas II* at 3-16 (internal citations and footnotes omitted). On direct appeal from his 2018 judgment of sentence, this Court remanded for an evidentiary hearing concerning the newly-discovered evidence of the misconduct of Detectives Nordo and Williams, and to determine whether the

Commonwealth committed a **Brady**[3] violation by failing to disclose this information to defense counsel prior to trial. **See id.** at 24-25.

Upon remand, the parties agreed not to conduct an evidentiary hearing and to grant Appellant a new trial based on the Commonwealth's "negligent" **Brady** violation in suppressing certain 2005 allegations against Detective Nordo. (**See** Commonwealth's Answer Regarding Nordo's Misconduct and its Nexus to this Case, 5/20/21, at ¶32).[4] Thus, on May 25, 2021, based on the Commonwealth's agreement, the assigned homicide calendar jurist, Judge Ransom, awarded Appellant a new trial.

Thereafter, the case was reassigned to Judge DeFino-Nastasi for a new trial. On July 8, 2021, Appellant filed a motion to bar retrial on double jeopardy grounds based on the Commonwealth's intentional or reckless failure to disclose Detective Nordo's misconduct to defense counsel prior to

---

[3] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding suppression by prosecution of evidence favorable to accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of prosecution).

[4] Specifically, the Commonwealth conceded: "Although the Commonwealth had actual knowledge of some of Nordo's prior acts of misconduct (and constructive knowledge of other prior acts of misconduct…) at the time [Appellant] was put on trial in this case in 2013 as well as in 2018, the trial prosecutors negligently suppressed that **Brady** information from the defense." (**See id.**) The 2005 allegations against Detective Nordo which the Commonwealth admitted that it had failed to disclose, involved a sexual incident in an interrogation room where a witness's sperm was discovered in the interrogation room. The Commonwealth did not prosecute Detective Nordo based on any misconduct arising from this incident at that time.

Appellant's 2018 trial. The court held hearings on the motion on February 15, 2022 and March 4, 2022.

At the conclusion of the March 4, 2022 hearing, the court denied Appellant's motion to bar retrial. Specifically, the court decided that the Commonwealth's actions did not violate *Brady* in this case where the relevant information concerning Detective Nordo's misconduct was in the public domain at the time of Appellant's September 2018 trial. Regarding the 2005 incident that the Commonwealth did not disclose to trial counsel, the court decided such action was not a *Brady* violation because the 2005 incident involving Detective Nordo would not be material evidence that would affect the outcome of Appellant's trial. Regarding the grand jury proceedings pertaining to Detective Nordo, the court explained that such information was secret and could not be shared outside the grand jury room.[5] Even if the Commonwealth violated *Brady*, however, the court ruled that its conduct was not intentional and/or reckless as required to bar a retrial under double jeopardy principles. Nevertheless, the court determined that the information regarding Detective Nordo constituted after-discovered evidence, which entitled Appellant to a new

_____

[5] The court explained that Detective Nordo was indicated in 2019, after Appellant's second trial. The court said that it was not until the indictment that Detective Nordo's coercive interrogation techniques actually came to light, including threatening individuals with prosecution, intimidating witnesses into signing false statements, giving individuals cash rewards for providing fabricated statements, and various sex crimes.

trial.[6]

Appellant filed a notice of appeal on Monday, April 4, 2022.[7] On June 2, 2022, Appellant filed a voluntary concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On September 11, 2023, this Court issued a disposition affirming the trial court's denial of Appellant's motion to bar retrial. Subsequently, both parties filed petitions for reargument and/or panel reconsideration. Based on the parties' petitions, this Court withdrew its

_____

[6] Although there were some references to Detective Williams during the hearings, Appellant did not develop any argument concerning Detective Williams' alleged misconduct in any meaningful way at the hearings.

[7] A trial court must make a determination of frivolousness following the denial of a motion to dismiss on double jeopardy grounds. *See* Pa.R.Crim.P. 587(b)(3) and (4) (explaining that following hearing on motion to dismiss based on double jeopardy violation, trial court shall enter on record statement of findings of fact and conclusions of law, and in case where judge denies motion, findings of fact shall include specific findings as to frivolousness). If the court decides the motion was frivolous, the trial court must advise the appellant that he has the right to file a petition for review of that order within 30 days. *See* Pa.R.Crim.P. 587(b)(5). If the court decides the motion was not frivolous, the court must advise the appellant that the order is immediately appealable as a collateral order. *See* Pa.R.Crim.P. 587(b)(6). In ***Commonwealth v. Gross***, 232 A.3d 819 (Pa.Super. 2020) (*en banc*), *appeal denied*, 663 Pa. 352, 242 A.3d 307 (2020), this Court addressed an appeal from an order dismissing appellant's double jeopardy motion on the merits, even though the trial court did not make any findings regarding frivolousness. ***See id.*** (explaining that order denying double jeopardy motion that makes no finding that motion is frivolous is collateral order under Pa.R.A.P. 313; noting that whether trial court followed or deviated from Rule 587 does not deprive this Court of appellate jurisdiction; our jurisdiction is conferred under Rule 313 of appellate rules and enduring precedent). Here, the trial court's March 4, 2022 order denying relief did not state whether Appellant's motion was frivolous, nor did the court issue any findings of fact on this issue. Nevertheless, we deem the order appealable as a collateral order. ***See id.***

prior disposition and granted panel reconsideration.

In his principal brief, Appellant had raised three issues for our review:

> Where the Commonwealth conceded, and the [trial] court granted, a motion for a new trial based on a violation of [**Brady**], did the doctrine of collateral estoppel and the coordinate jurisdiction rule bar a second judge from reopening that decision months later when [A]ppellant sought to bar retrial on double jeopardy grounds?

> Should the motion to dismiss have been granted where there was both intentional and reckless suppression of evidence by the Commonwealth as the [c]ourt seemed to find?

> Assuming that the [trial c]ourt could reopen this matter, were there insufficient factual and legal bases for finding that no **Brady** violation had occurred?

(Appellant's Brief at 2).[8]

As a preliminary matter, we must address certain claims raised in the

_____

[8] In our initial disposition, we had deemed Appellant's first and third issues waived for failure to preserve them in his Rule 1925(b) statement. Specifically, in his concise statement, Appellant raised the following single issue: "Did the [c]ourt commit error when the [c]ourt denied the Motion for Double Jeopardy after [granting] a new trial, based on the Commonwealth's intentional and/or reckless **Brady** violations which violated his right to a fair trial?" (Rule 1925(b) Statement, filed 6/2/22, at 1). Significantly, Appellant did not raise in his concise statement his first issue on appeal concerning whether the trial court violated the coordinate jurisdiction rule or the doctrine of collateral estoppel; or his third issue concerning whether there were "insufficient factual or legal bases" for the court to find that no underlying **Brady** violation occurred. Rather, the sole issue Appellant preserved in his concise statement was his second issue raised on appeal, namely, whether the court erred in denying the motion to dismiss based on the Commonwealth's intentional and/or reckless conduct. Thus, we had limited our review to Appellant's second issue on appeal. **See Commonwealth v. Castillo**, 585 Pa. 395, 403, 888 A.2d 775, 780 (2005) (explaining any issues not raised in Rule 1925(b) statement are waived).

parties' petitions for reargument. Significantly, in its petition for reargument, the Commonwealth admits:

> [T]he Commonwealth unintentionally included two misstatements of material fact regarding who was consulted and what was known about former [D]etective Philip Nordo at the time of [Appellant's] September 2018 trial. One of those misstatements formed the basis for this Court's ruling. These misstatements formed a substantial part of the Commonwealth's argument as to why a violation of [**Brady**] was not reckless or intentional. Because correcting these misstatements requires the consideration of evidence not in the existing record, and because that additional evidence at least potentially impacts the resolution of issues in the case, the Commonwealth respectfully requests that this court vacate its decision and remand for the limited purpose of resolving these two issues of fact at an evidentiary hearing.

(Commonwealth's Petition for Reargument, filed 9/25/23, at 1-2). The Commonwealth then details the specific misstatements at issue. (**See id.** at 3-4). The Commonwealth further asks this Court to remand, stating:

> The Commonwealth did not intentionally make inaccurate assertions of fact in its appellate brief. Instead, they occurred because of a miscommunication within the District Attorney's Office: the undersigned prosecutor from the Appeals Unit who drafted the brief, proceeding in good faith, was unaware of facts known to other attorneys in the office. These facts were not apparent from the existing record. The undersigned prosecutor who drafted the Commonwealth's brief for appellee did not become aware of these facts until this Court issued its decision and the attorneys with such actual knowledge informed him of them.
>
> The inaccuracy of the aforementioned misstatements cannot be corrected on the current record for two reasons. First, the existing record is either ambiguous or silent as to their inaccuracy. Second, because the actual facts are based on non-record evidence—namely, the post-evidentiary hearing letter from [Assistant District Attorney Michael] Garmisa to defense counsel, attached hereto as

> Exhibit A. Accordingly, a remand for further development of the evidence is necessary to ensure a complete record.

(***Id.*** at 5). In his petition for reargument and/or panel reconsideration, Appellant discusses the Commonwealth's concessions and joins its request for a remand. (***See*** Appellant's Petition for Reargument, filed 9/25/23, at 1, 9-11).[9]

Based on the parties' agreement, the best resolution of this case is to remand for another evidentiary hearing, at which time any errors in the record can be corrected and any new evidence can be heard by the trial court prior to the court's ruling on Appellant's motion to bar retrial. Accordingly, we vacate and remand for further proceedings.

Order vacated. Case remanded for further proceedings. Jurisdiction is relinquished.

_____

[9] Appellant also sought reargument and/or panel reconsideration, challenging this Court's initial waiver analysis. Appellant claims that "[w]hile the ways in which error was claimed were not specifically delineated, the issue in the 1925(b) Statement specifically stated that the [c]ourt generally erred in denying the motion to dismiss. It is respectfully submitted that [Appellant's] question was within the rules and allowed for subsidiary questions to be raised." (***Id.*** at 8). Appellant further insists that "the broad term error [raised in the concise statement] would include violations of the coordinate jurisdiction and collateral estoppel doctrines…." (***Id.*** at 9). We disagree with Appellant's position and did not grant panel reconsideration on this ground.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/13/2023